Argued at Pendleton October 29; reversed December 12, 1945

# CITY OF PENDLETON *v.* HOLMAN ET AL.

(164 P. (2d) 434)

Before BELT, Chief Justice, and ROSSMAN, BAILEY, LUSK and HAY, Associate Justices.

*W. C. Perry,* of Pendleton, for appellant.

*John F. Kilkenny,* of Pendleton (Raley, Kilkenny & Raley, of Pendleton, on the brief), for respondents.

BAILEY, J. This suit was brought by the City of Pendleton against Nellie S. Holman and Donald L. Holman, her husband, to foreclose a lien on real property owned by defendant Nellie S. Holman in that city. The complaint, filed on February 20, 1945, alleges that in 1913 the city undertook to and did improve Webb street which abuts upon the property here involved. It sets forth the proceedings leading up to and including the improvement of, and the assessment against, the property, and avers that Sybil Clopton, then owner of the property, had made application to the city to pay such assessment in ten equal installments, together with interest at the rate of six per cent per annum on deferred payments; that the lien

became effective on October 2, 1913, and that no payments had been made on the assessment. The defendants demurred to the complaint on two grounds: (1) That the suit was not commenced within the time limited by law, and (2) that the complaint did not state facts sufficient to constitute a cause of suit. The demurrer was sustained on both grounds, and upon the failure of the plaintiff to plead further a decree was entered dismissing the suit. The plaintiff has appealed.

Defendants attacked the complaint on the following three grounds: (1) That the suit is barred by the statute of limitations, referring particularly to § § 1-204 and 1-209, O. C. L. A.; (2) that plaintiff is guilty of laches, and (3) that there is a conclusive presumption that the assessment has been paid. The last two grounds are presented on the theory that the complaint does not state facts sufficient to constitute a cause of suit. No question has been raised as to the validity of the assessment.

Payment of the assessment was to be made in ten annual installments. The last one matured on October 2, 1923. This suit was not instituted until more than twenty years thereafter, and no reason for the delay in bringing the suit is set forth in the complaint.

Title II, chapter 1, Code of Civil Procedure, 1862, prescribed the period within which an action at law shall be commenced. Section 13 of that title provided as follows:

"The limitations prescribed in this chapter, shall apply to actions brought in the name of the state, or any county or other public corporation therein, or for its benefit, in the same manner as to actions by private parties." Code of Civil Procedure,

1862, p. 6; Deady, General Laws of Oregon, 1845-1864, § 13, p. 142.

This section remained unchanged until 1903, at which time it was amended to read as follows:

"The limitation prescribed in this title shall not apply to actions brought in the name of the state, or any county, or other public corporation therein, or for its benefit, but causes of action that have heretofore become barred by virtue of any statutory provision are not intended to be revived hereby." General Laws of Oregon, 1903, p. 18, now codified as § 1-211, O. C. L. A.

Defendants assert that the city of Pendleton was acting in its private or proprietary capacity in the improvement of Webb street, and that therefore the statute of limitations applied to it in the present proceeding the same as to an individual. In support of this contention they rely upon *Ebell v. City of Baker,* 137 Or. 427, 299 P. 313. The plaintiffs in that case brought suit for the purpose of quieting title against the city of Baker to an appropriation by plaintiffs of the waters of Goodrich creek. Plaintiffs' claim to the waters was based upon, (1) priority of appropriation, and (2) adverse user for a period of over sixty years. In holding that plaintiffs had acquired the right to the use of the waters by adverse possession, the court said: "The statute of limitations runs against the city in its proprietary or business capacity: *Phillips v. Leininger,* 280 Ill. 132 (117 N. E. 497, 498). A city can lose its water rights by adverse possession and user by another, amounting to prescription." Nowhere in the opinion or the briefs of counsel have we been able to find any reference to what is now § 1-211, O. C. L. A., providing that the statute of limitations "shall not

apply to actions brought in the name of the state or any county, or other public corporation therein, * * *.''

*Phillips v. Leininger,* cited in the excerpt quoted from *Ebell v. City of Baker,* supra, involved the construction of a general statute of limitations. It was there held that the state, counties, and municipalities were exempted from the operation of the statute of limitations only as to ''matters affecting their public rights as distinguished from private and local rights, with respect to which such municipalities, the same as individuals, are subject to the statute of limitations.'' No question of the interpretation of a statute exempting municipalities from the prescribed limitations was considered.

In *Seeck v. City of Lebanon,* 148 Or. 291, 36 P. (2d) 334, plaintiff brought suit to restrain the city of Lebanon from collecting, or attempting to collect, an assessment against his property for the payment of the improvement of a street in that city. Plaintiff contended that the city had not brought proceedings to collect the assessment within the period prescribed in the charter of the city, and therefore had lost its lien. This court held that the provision of the charter on which the plaintiff relied had no application to the assessment there in question, and that ''The general statute of limitation does not run against the city. Oregon Code 1930, § 1-211.'' *Ebell v. City of Baker,* supra, was not mentioned. No case was cited by the court in support of its assertion as to the general statute of limitations. It was apparently conceded by counsel for the respective parties in that case that the general statute of limitations did not apply to municipalities, and the court took the same view, for in the beginning of the opinion is the following state-

ment: "The pleadings are somewhat lengthy, but in the final analysis the only question involved is: Does the special statute of limitations in the charter of the city of Lebanon prevent the city from now enforcing the collection of these assessments?"

In *American Surety Company of New York v. Multnomah County,* 171 Or. 287, 324, 138 P. (2d) 597, 148 A. L. R. 926, which was an action at law, the case of *Seeck v. City of Lebanon,* supra, was cited in support of the proposition that the general statute of limitations "does not run against the city."

■ We shall now direct our attention to the wording of § 1-211, O. C. L. A  This section is a part of the code prescribing the period within which actions at law shall be commenced. It expressly provides that the "limitation prescribed in this title shall not apply to actions brought in the name of the state, or any county, or other public corporation therein". There is nothing in the language of this section to indicate that it does not apply to a municipality when acting in its business or proprietary capacity, the same as when acting in its public or governmental capacity. The section exempts from the "limitation prescribed * * * actions brought in the name" of the city. It does not purport to exempt only certain actions, but all actions brought in that manner.

Prior to the enactment of § 1-211, in 1903, the statute of limitations was made applicable to the state, counties, and other public corporations within the state the same as to individuals. In *Schneider v. Hutchinson,* 35 Or. 253, 57 P. 324, 76 Am. St. Rep. 474, decided in 1899, it was contended that the statute of limitations did not apply to actions brought by the state in its

sovereign capacity but was limited to those brought in its proprietary capacity. In answer to this contention, the court said: "No distinction is to be found in the decisions, under statutes providing that actions by the state shall be barred within a specified period, between actions brought in its sovereign and those brought in its proprietary capacity, but all alike are held to be within the terms of the statute."

■ 37 C. J., Limitations of Actions, § 32, p. 715, states what appears to be the general rule as to the applicability of statutes of limitations to municipalities, as follows:

"Municipalities are sometimes expressly designated by the statute of limitations as coming within its provisions, or by construction are brought within the language of the statute, or of the constitution, or on the other hand are made exempt from the statute by the state constitution, or by statute, or the time for bringing specificed actions against municipalities is prescribed by statute. Where municipalities are not so designated, the general rule is that statutes of limitations run not only for but against municipalities, except in litigation respecting public rights, or property held upon a public trust. * * *"

In *City of Kaufman v. French*, (Tex. Civ. App.) 171 S. W. 831, plaintiff instituted a suit to enjoin the city of Kaufman from removing his fences and opening a street through the enclosure constituting his homestead in that city. One of the contentions advanced by him was that the city was barred by the statute of limitations from opening the street. The lower court entered judgment for the plaintiff, and on appeal this judgment was reversed. In referring to the contention

that the city was barred by the statute of limitations, the court said:

> "Judgment, it seems, was not authorized in favor of appellee either upon the ground of limitation, estoppel, or nonacceptance of the alleged dedication. The dedication, if any, was made by the execution of the deeds referring to the Bryant map, and the earliest of these deeds was the one made to Mrs. Cree in 1883. By the statute of 1887 (Acts 20th Leg. c. 41), municipal corporations were exempted from the operation of the statute of limitations, and hence limitation in favor of appellee could not run after the passage of that law, and, less than five years having elapsed from the date of the supposed dedication and the taking effect of said statute, appellant's claim of right to open the street in question was not barred."

*Town of Crenshaw v. Panola County,* 115 Miss. 891, 76 So. 741, was an action brought by the city against the county for the recovery of taxes collected by the county which the city claimed should have been paid over to it. These taxes were collected for the years 1907 and 1908, and the action was not brought until 1915. The lower court ruled that the constitutional provision specifying that statutes of limitations shall not run against a municipal corporation had no application where one municipal corporation was suing another, and therefore the action was barred. The supreme court, in reversing the judgment of the lower court, stated that "Section 104 of our constitution expressly provides that the statutes of limitation shall not run against municipal corporations. The plaintiff in this case is a municipal corporation, and we can find nothing in the constitution to warrant the exception sought to be made in this case. The county could, of course, invoke the statute against a natural

person or private corporation, but the constitution closes the door when the plaintiff is a municipal corporation.''

Had it been the intention of the legislature to subject municipalities to the operation of the statute of limitations in their proprietary activities, it could have accomplished its purpose in one of two ways. Either it could have repealed outright § 13 of the 1862 Code of Civil Procedure, or, in the amendment of that section in 1903, it could have exempted municipalities from the operation of the statute only to the extent of their public or governmental functions. It did neither.

The distinction between governmental and proprietary functions of a city has probably been the subject of as much controversy as any other question before the courts. Even in the maintenance of streets there is a diversity of opinion as to whether the city is acting in a governmental or proprietary capacity. *Blue v. City of Union,* 159 Or. 5, 75 P. (2d) 977; *State ex rel. Schlegel v. Munn,* 216 Iowa 1232, 250 N. W. 471. The question is arising continuously as to whether certain municipal functions are public or private. It must therefore be presumed that the legislature, in the enactment of what is now known as § 1-211, O. C. L. A., in 1903, intended to avoid these controversial questions by exempting all actions brought in the name of a municipality from the operation of the general statute of limitations. We therefore conclude that the exemption from the statute includes all actions brought in the name of a municipality.

Section 9-103, O. C. L. A., provides in part as follows: ''A suit shall only be commenced within the time limited to commence an action as provided in chapter 2

of title I of this code; * * *'' This portion of § 9-103 was part of the 1862 Code of Civil Procedure. Deady, General Laws of Oregon, 1845-1864, § 378, p. 244. Chapter 2 of title I, referred to in the foregoing excerpt, contains the general statute of limitations and includes § 1-201 to § 1-224.

■ Defendants argue that § 1-211, O.C.L.A., providing that the statute of limitations shall not apply to actions brought by a municipality, has no application whatsoever to suits in equity. In support of this contention they rely on *State of Oregon v. Warner Valley Stock Company,* 56 Or. 283, 106 P. 780, 108 P. 861, and especially on what was said in the opinion on the petition for rehearing. That case was commenced in 1907 for the cancellation of seven deeds issued by the state to Warner Valley Stock Company and its predecessor in interest, R. F. McConnaughy. At the time these deeds were issued, § 13 of title II, chapter I, p. 6, Code of Civil Procedure, 1862, and which section is hereinbefore quoted, was in full force and effect and provided that the statute of limitations should apply to actions brought in the name of the state, or any county, or other public corporation in the same manner as to actions by private parties. All the deeds therein involved, except the one dated June 23, 1899, had been issued more than ten years before § 13 was amended in 1903, exempting the state, counties, and municipalities from the operation of the statute of limitations.

The court, in its opinion, treated the complaint as containing three causes of suit, relating to (1) the deeds dated August 21, 1891, and March 23, 1893, (2) the deed issued on January 18, 1883, and (3) the deed issued June 23, 1899. A demurrer to the complaint

was filed by the defendant and was sustained as to the first two causes of suit on the ground that they were barred by the statute of limitations. Issue was tendered by the defendant to the "third cause of suit" and after trial upon the merits, the court found in favor of the defendant, and a decree was entered dismissing the suit. From this decree the state appealed.

This court held that the deeds included in the first cause of suit were void for the reason that the state land board had no authority to issue them. In reversing the decree as to that cause of suit, this court said:

"This case [referring to the first cause of suit] is not covered by any of the provisions of the statute of limitations. It is a case of purely equitable cognizance. Its purpose is to procure the cancellation of deeds, valid on their face, issued by the officers of the state, whose duty it was to execute deeds for the state in cases of sales of lands, and were in due form, but issued in a case not authorized by law, and therefore cannot bind the state, but it has no remedy at law. In cases of purely equitable rights the equity court is not bound by the statute of limitations. If the jurisdiction is not concurrent with that of the law courts, but is exclusive, it is not governed strictly by the limitations applicable to law courts, but restricts or enlarges the limitations according to the circumstances of each particular case. [Citing authorities].

"In Cranmer v. McSwords, 24 W. Va. 594, it is said that, where there is no legal right, the statute of necessity has no application by analogy or otherwise, and the case must be determined purely by the ordinary equity rules. Laches will bar an equity, but lapse of time alone may not be sufficient to constitute laches. It depends upon whether conditions have been changed, resulting in injury to the defendant, on account of the delay." Citing, among

other cases, *Wilson v. Wilson,* 41 Or. 459, 464, 69 P. 923; *Wills v. Nehalem Coal Company,* 52 Or. 70, 90, 96 P. 528.

The complaint attacked both the sufficiency and truthfulness of the affidavits relating to the proof of reclamation of the lands described in the deed involved in the second cause of suit. In referring to the distinction between the first and second causes of suit, the court stated:

" * * * This deed, [referring to the one involved in the second cause of suit] however, does not bear the same relation to the statute of limitations or the laches of the plaintiff as the deeds of date August 21, 1891, as, in case of the former, the board had jurisdiction of the subject-matter and authority to issue the deed. More than the statutory period of limitation had elapsed since its execution when this suit was commenced, and thus it appears *prima facie* that plaintiff is guilty of laches, such as will bar the suit, unless excuse for the delay is shown.

"The burden of proof is upon the plaintiff to allege and prove the facts showing such excuse, how and when it came to a knowledge of the fraud, and that due diligence would not have discovered it."

The court concluded its opinion by stating "that the demurrer to the complaint so far as it relates to the deeds of date August 21, 1891, and the one of date March 23, 1893, will be overruled. And as to the one of date January 18, 1883, it will be sustained."

We now come to the opinion on petition for rehearing. In considering this opinion it must be borne in mind that the defendant prevailed in the second cause of suit involving the deed which the state land board had authority to execute. As to the first cause of suit, involving the deeds which the state land board had no

authority to execute, this court held that the statute of limitations had no application, either directly or by analogy, inasmuch as equity alone had exclusive jurisdiction of the subject-matter. The petition for rehearing was therefore directed to the ruling of this court relative to the first cause of suit. The part of the opinion on petition for rehearing, upon which the defendants rely, reads as follows:

"By this motion counsel for defendant again urge that the statute of limitations bars this suit, and question our construction of section 392, B. & C. Comp. As supplementary to what is said in the opinion, we may add that there can be no doubt that our statute of limitations (sections 3-26, B. & C. Comp.) can have no application to the state, except by virtue of the provision of section 13, which has been repealed by the amendment of 1903 (Laws 1903, p. 18), and provides that the limitations prescribed in this title shall apply to the state.

"It is a common-law maxim *'Nullum tempus occurit regi.'* 1 Wood, Limitations, § 52, states that: 'Except the statute otherwise expressly provides, it [the statute of limitations] cannot be set up as a bar to any right or claim of the state.' Those sections of the code only apply to sections [actions], and section 392 [§ 9-103, O. C. L. A.] provides that suits shall only be commenced within the time limited to commence actions, as provided in chapter 2, title 1, of this code (sections 3-26). [§§ 1-201 to 1-224, O. C. L. A.] This does not make the statute of limitations apply to suits by the state, nor does section 13 apply to suits. And the state is not barred."

The closing statements in the excerpt last quoted, to wit: "This does not make the statute of limitations apply to suits by the state, nor does section 13 apply to suits. And the state is not barred", when read without reference to what had been previously said, is

somewhat ambiguous, but when read in connection with the entire opinion its meaning becomes clear. The court was referring to the first cause of suit, which was "a case of purely equitable cognizance", and "not covered by any of the provisions of the statute of limitations." There was "no remedy at law" available to the state as to the subject-matter constituting the first cause of suit, and therefore "the statute of necessity" had "no application by analogy or otherwise".

In the second cause of suit, the court did give effect to the statute of limitations by stating that "More than the statutory period of limitation had elapsed since its execution when this suit was commenced, and thus it appears *prima facie* that plaintiff is guilty of laches, such as will bar the suit, unless excuse for the delay is shown."

All through its opinions in *State of Oregon v. Warner Valley Stock Company*, supra, the court was referring to the statute of limitations during the time when the statute was specifically made applicable to actions by the state.

■ Defendants' contention that the plaintiff is guilty of laches, such as will bar the suit, is based on the premise that the general statute of limitations applies to the city in a case of this nature. Courts of equity are said to act by analogy to the statutory limitations of actions at law, and if it appears from the face of the complaint that more than the statutory period of limitation has elapsed since the accrual of the cause of suit and before the commencement thereof, plaintiff will be barred from maintaining the suit unless excuse for the delay is shown by the complaint. *Wills v. Nehalem Coal Co.*, 52 Or. 70, 90, 96 P. 528; *State of*

*Oregon v. Warner Valley Stock Company,* supra, at page 304. The foregoing principle of law, however, is not applicable to the instant case for the reason that the statute of limitations does not apply to a city. It can not therefore be said that this suit was instituted either before or after the statutory period had elapsed. Moreover, the only remedy which the city had was in equity to foreclose its lien.

In 30 C. J. S., Equity, § 116, page 531, referring to delay in enforcing a right, it is said:

> "Lapse of time is an important, indeed, an essential, element of laches. However, unless a statute of limitations is by its terms applicable or is applied by analogy, see infra § 131, there is no fixed period within which a person must assert his claim or be barred by laches; the length of time depends on the circumstances of the particular case.
>
> "Moreover, although there are some cases apparently holding to the contrary, the rule supported by the weight of authority is that delay in asserting a right does not of itself constitute laches."

■ There is nothing in the complaint, other than the apparent lapse of time, which is suggestive of laches. It is alleged that Sybil Clopton was the owner at the time the assessment was made and that defendant Nellie S. Holman was the owner at the time of the institution of the suit. It does not appear when or under what conditions Mrs. Holman acquired title to the property. No facts are alleged which would indicate that the defendants had been injuriously affected by the delay. It has been held a number of times by this court that "mere delay itself does not constitute laches unless the delay works to the injury of another." *American Surety Company of New York v. Multnomah County,* supra, at page 327; *Wills v.*

*Nehalem Coal Company,* supra; *Wilson v. Wilson,* 41 Or. 459, 464, 69 P. 923; *State of Oregon v. Warner Valley Stock Company,* supra, at page 300.

█ It does not therefore appear from the complaint that the suit is barred by laches, and the demurrer was erroneously sustained on that ground. This does not remove from the defendants the defense of the staleness of plaintiff's claim. It does place upon them, however, the burden of pleading and proving facts which would make it inequitable to grant plaintiff the relief which it asks. There is no absolute rule as to what constitutes laches. Each case must of necessity be determined according to its own particular circumstances. Generally speaking, laches "will be applied only where the enforcement of the right asserted would work injustice." 30 C. J. S., Equity, § 115, pp. 528, 529.

The demurrer was also sustained on the ground that inasmuch as it appeared from the complaint that more than twenty years had elapsed between the maturity of the last installment of the assessment and the commencement of the suit, and no excuse or reason having been alleged for this delay, there was a presumption that the assessment had been paid.

█ The rule as to the presumption of payment after a lapse of twenty years is well stated in an annotation in 1 A. L. R., p. 781, as follows:

> "The doctrine that, in the absence of rebutting circumstances, debts will be presumed paid after twenty years from the time they were due, is too well settled to require authority to support it. For convenient reference, however, the cases have been, to a considerable extent, classified as regards the various classes of indebtedness."

A wealth of authorities is cited in the footnote in support of the foregoing statement. To the same effect see *Beekman v. Hamlin,* 19 Or. 383, 24 P. 195, 20 Am. St. Rep. 827, 10 L. R. A. 454; *Beekman v. Hamlin,* (on rehearing) 20 Or. 352, 25 P. 672, 10 L. R. A. 454.

The question now confronting us is whether plaintiff, in order to render the complaint invulnerable to a demurrer, is required to allege facts and circumstances which would excuse its long delay in bringing the suit, thereby tending to rebut the presumption of payment.

*Beekman v. Hamlin,* supra, was a proceeding to revive a judgment under § 295, Hill's Code. More than twenty years had elapsed between the entry of the judgment and the filing of the proceeding for its revival. No reason was alleged for this delay. Mr. Justice Strahan, in the original opinion, called attention to the failure of the complaint "to allege any facts or circumstances which would excuse the long delay or which tended to continue the defendant's liability after twenty years." He then went on to say that this "was expressly held to be necessary" in *Olden v. Hubbard,* 34 N. J. Eq. 85. The opinion on rehearing (20 Or. 352) was written by Mr. Justice Lord, and in reference to the question here under consideration, he stated as follows:

"But a presumption of payment from lapse of time may be raised by demurrer when shown by the facts stated in the complaint, as was done in Olden v. Hubbard, 34 N. J. Eq. 85. And to repel such presumption, any existing circumstances which would have that effect should be alleged. In Solomon v. Solomon, 81 Ala. 507, it was held that the presumption of payment arising from the lapse of

time may be taken by demurrer when shown by the facts stated, but that it is a matter of defense and must be claimed, the court saying: 'While the defense of staleness may be made by demurrer when the facts out of which it springs appear on the face of the bill (Story's Eq. Pl. §§ 404, 503, 751), still it is defensive and must be claimed.' (Maury v. Mason, 8 Port. 211; Solomon v. Solomon, 83 Ala. 395). Taking the objections by demurrer is in analogy to the rule applied to the statute of limitations, as indicated in Olden v. Hubbard, supra, so that to avoid the presumption and render the complaint invulnerable to a demurrer, the plaintiff is required to allege in his complaint the facts and circumstances on which he relies to rebut such presumption.''

Upon the case being remanded to the circuit court, the plaintiff amended his complaint by alleging that the delay in attempting to enforce the judgment was due to the fact that the defendant had no property during that time subject to execution and that he was unable to pay his debts. The case was tried before a jury which returned a verdict in favor of the defendant, and thereupon plaintiff appealed to this court. *Beekman v. Hamlin,* 23 Or. 313, 31 P. 707. The plaintiff assigned as error the refusal of the circuit court to give two of his requested instructions. One of the instructions given by the court reads as follows:

''The court instructs you that the presumption of payment after twenty years may be rebutted by a preponderance of testimony showing that the plaintiff had used diligence to enforce his judgment, or that the defendant was insolvent for twenty years prior to the nineteenth of March, 1889, when this action was commenced, or other circumstances of the situation of the parties which tend to excuse the plaintiff for non-issuance of execution within said period of twenty years.''

Plaintiff requested that the court further instruct the jury, in respect to the foregoing instruction, that "the presumption of payment may be repelled by any evidence of the situation of the parties, or other circumstances tending to satisfy the jury that the debt is still due". The refusal of the court to give this instruction constituted one of the plaintiff's assignments of error. In ruling that this requested instruction should have been given, Mr. Chief Justice Lord, speaking for the court, said:

" * * * There is no doubt that the particular evidence specified in the instruction given [referring to the instruction hereinbefore quoted] was competent for the purpose of rebutting the presumption of payment, but nevertheless it was not absolutely indispensable to the plaintiff's recovery that he had 'used diligence' or had any 'excuse' for not doing so, if he could prove by competent evidence that the judgment had not in fact been paid."

The court also held that error was committed by the trial court in refusing to give the following requested instruction which was the first asked by the plaintiff: "One of the principal allegations which it is necessary for the plaintiff to establish in this case is, that the judgment has not been paid. The evidence of the plaintiff, if entitled to full credit and uncontradicted, is sufficient to establish that fact." Following the hereinbefore quoted excerpt of the ruling of the court, the opinion continues:

"In reference to the instructions asked, as related to those given, the case stood in this wise: The contention of the plaintiff was that the presumption of payment arising from mere lapse of time had only the effect to make out a *prima facie* case of payment, thereby changing the burden of proof; that the positive evidence of the plaintiff, if

entitled to full credit and uncontradicted, would overcome the *prima facie* case thus made, or have the effect to rebut such presumption. Hence, as applied to the first instruction given, he sought to have the instruction asked included among the 'satisfactory and convincing' evidence required to rebut the presumption from mere lapse of time. * * * The circumstances disclosed by the record, taken in connection with the other instructions asked and refused in view of its object, rendered it necessary that such instructions should have been given to prevent the jury from being misled as to the vital issue in the case to be determined by them.''

The decision on the second appeal in *Beekman v. Hamlin,* supra, (23 Or. 313) holds that the presumption of payment after twenty years is a rule of evidence affecting the burden of proof and not a bar to the right of action. Since it was not ''indispensable to the plaintiff's recovery that he had 'used diligence' or had any 'excuse' for not doing so, if he could prove by competent evidence that the judgment had not in fact been paid'', then it follows that it was unnecessary for plaintiff to allege that he had used diligence to enforce his judgment or allege facts which tended to excuse him ''for non-issuance of execution within said period of twenty years.'' In other words, it was not necessary for plaintiff to allege facts which he was not required to prove.

In his petition for rehearing, the defendant urged that the decision on the second appeal in effect overruled the holding of the court on the first appeal. A rehearing was granted and the decision on the second appeal was adhered to without a written opinion.

■ There is, as pointed out in 34 Am. Jur., Limitation of Actions, § 6, p. 16, the following distinction

between the presumption of payment from lapse of time and the bar created by statutes of limitations:

" * * * They rest upon entirely different and distinct principles, and are presented by different and distinct pleas. The latter is a prohibition of the action, while the former, prima facie, obliterates the debt. A statute of limitations must ordinarily be pleaded and relied on by the defendant, while the presumption of payment arising from the lapse of time is usually drawn from the plaintiff's own case, and when so drawn, it can hardly be regarded as a matter of affirmative defense. The bar of the statute of limitations is removed by nothing less than a new promise to pay or an acknowledgment consistent with such promise. On the other hand, the presumption of payment is rebutted, or, to speak more accurately, does not arise, where there is affirmative proof, beyond that furnished by the specialty itself, that the debt has not been paid, or where there are circumstances that sufficiently account for the delay of the creditor."

See also in this connection 37 C. J., Limitations of Actions, § 4, p. 685, where it is stated that presumption of payment "is a mere rule of evidence and is subject to rebuttal, whereas the statute of limitations makes the lapse of time a positive and absolute legal bar."

In *Dietemann v. People,* 76 Colo. 378, 232 P. 676, it is said: "That the presumption of payment is a conclusive presumption we have no doubt. There is a distinction between presumption of payment from the running of a statute of limitations and a presumption of payment arising from the lapse of time. In the latter case the presumption of payment is a mere rule of evidence, and may be rebutted, but in the former the statute of limitations makes the lapse of time a positive and absolute legal bar." (Citing cases). To the same effect

is *Clendenning v. Thompson,* 91 Va. 518, 22 S. E. 233. The presumption of payment, the court said, "is a rule of evidence, not of pleading, and simply raises a presumption of payment." See also *In Re Frey's Estate,* 342 Pa. 351, 21 A. (2d) 23; *Payne v. Hathaway,* 3 Vt. 212; *Chesapeake & Delaware Canal Co. v. United States,* 223 F. 926, L. R. A. 1916 B, 734; *Chesapeake & Delaware Canal Co. v. United States,* 240 F. 903.

On the second appeal in *Chesapeake & Delaware Canal Co. v. United States,* supra, (240 F. 903), the Circuit Court of Appeals, Third Circuit, answered the contention of the defendant that plaintiff was "obliged to explain or excuse his prolonged failure to sue," as follows: "But in the case of a private suitor also we think the defendant's contention is not sound. Loose expressions may have been sometimes used on this subject; but, if the presumption and the reasons of policy that sustain it be closely considered, we think it will appear that after 20 years the issue between the parties continues to be what it was before, namely, Has the particular debt been paid?"

Plaintiff alleged that no part of the assessment had been paid. This allegation is not a conclusion of law but a statement of fact. Although there are cases to the contrary, we are of the opinion that it was not necessary for plaintiff to allege in its complaint any excuse for its "prolonged failure to sue". The presumption of payment is a rule of evidence and may be rebutted by satisfactory evidence that the debt has not been paid.

In the instant case the city, in attempting to collect the assessment, is acting in its proprietary capacity, *Blue v. City of Union,* supra, and is subject "to the same rules respecting the burden of proof, the

quantity and character of evidence, the presumptions of law and fact, that attend the prosecution of a like'' suit or action by an individual. *United States v. Stinson,* 197 U. S. 200, 49 L. Ed. 724, 25 S. Ct. 426; *In Re Frey's Estate,* supra.

The question of whether the presumption of payment applies to the state, counties, or public corporations in the performance of their governmental duties, is not before us for consideration; therefore, we express no opinion thereon. See in this connection, *United States v. Thompson,* 98 U. S. 486, 25 L. Ed. 194.

■ In our opinion the court committed error in sustaining the demurrer to the complaint. The decree therefore is reversed and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion. No costs will be allowed to either party in this court.